## George W. Washburn v. The People.

A defendant in a criminal case may waive his right to have a preliminary examination before an information is filed against him, as well when called upon to plead to the information as when brought before the examining magistrate. And if at the time of pleading he make no objection on the ground that such examination has not been had or waived, he must be understood to admit that it has been had, or that he has waived or then intends to waive it.

It is not necessary that an information should show on its face that a preliminary examination has been had, or been waived, in cases where the defendant is not a fugitive from justice. If the defendant intends to insist upon the want of such examination, he should take the objection by plea in abatement setting up the fact that it has not been had, or by motion to quash based on a proper showing by affidavit.

The verification of a criminal information, by the oath of the prosecuting attorney, that "he knows the contents of the foregoing information, and that he has good reason to believe and does believe the same to be true as therein set forth," is sufficient.

A child seven years of age is competent to testify : the question of his credibility is for the jury.

The prisoner was on trial for the murder of his wife. The prosecution gave evidence, under objection, showing that, before the alleged murder, the prisoner had been arrested on a charge of crime, but of what crime, or upon whom committed, was not shown. The defense then, on cross-examination, proved that the charge was of some offense committed upon the wife. Held, that evidence of this fact was admissible, as tending to show hostile relations existing between the prisoner and the deceased, which would bear upon the question of motive and tend to prove malice. And it being made to appear by the cross-examination that the arrest was for an offense upon the wife, the error of admitting evidence of an arrest, without showing for what, was thereby cured.

*Heard May 3d, 1861. Decided July 17th.*

Error to Washtenaw Circuit, where plaintiff in error was proceeded against by information for the murder of Lucy A. Washburn, his wife, as follows:

"*State of Michigan, Washtenaw County, ss.:*

The Circuit Court for the County of Washtenaw.

Sylvester Abel, Prosecuting Attorney for the county of Washtenaw aforesaid, for and in behalf of the People of the State of Michigan, comes into said Court, in the June term thereof, in the year of our Lord one thousand eight hundred and sixty, and gives it here to understand and be informed, that George W. Washburn, late of the city of Ypsilanti, in the county of Washtenaw and State of

Michigan, heretofore, to wit, on the twenty-first day of May, in the year of our Lord one thousand eight hundred and sixty, with force and arms, at the city of Ypsilanti aforesaid, in and upon one Lucy A. Washburn, in the peace of God and the People of this State then and there being, feloniously, wilfully, and of his malice aforethought, did make an assault, and that the said George W. Washburn aforesaid feloniously, wilfully, and of his malice aforethought, her, the said Lucy A. Washburn, did seize by the throat, choke, strangle, and suffocate, by means of which said seizing by the throat, strangling and suffocating, the said Lucy A. Washburn then and there instantly died."

There were several other similar counts, and also counts for manslaughter; and the information was verified as follows:

" *State of Michigan, Washtenaw County, ss.:*

Sylvester Abel being duly sworn, deposes and says, that he knows the contents of the within and foregoing information, and that he has good reason to and does verily believe the same to be true, as therein set forth.    S. Abel.

Sworn and subscribed before me at Ann Arbor, this 15th day of June, a. d. 1860.
                                     Robert J. Barry, Clerk."

To this information the following plea was interposed:

" And the said George W. Washburn, in his own proper person, cometh into Court here, and having heard the said information read, saith: That the Circuit Court for the county of Washtenaw aforesaid here ought not to take cognizance of the murder and manslaughter charged in said presentment above specified, because, protesting he is not guilty of the same, nevertheless, the said George W. Washburn saith, that this Court has not or cannot obtain jurisdiction of said crimes of murder and manslaughter, by presentment of the Prosecuting Attorney for the county of Washtenaw, and because there is not any thing set forth in said presentment in regard to said offenses of murder and manslaughter which gives jurisdiction to the Circuit Court for the county

of Washtenaw, to hear, try and determine the same, and this he, the said George W. Washburn, is ready to verify. Wherefore he prays judgment, if the Circuit Court for the county of Washtenaw, now here, will take further cognizance of the presentment aforesaid, and that by the Court, now here, he may be dismissed and discharged."

To which the Prosecuting Attorney replied as follows:

"And hereupon Sylvester Abel, Prosecuting Attorney of said county, who prosecutes for the said county in this behalf, says, that notwithstanding any thing by the said George W. Washburn above in pleading alleged, this Court ought not to be precluded from taking cognizance of the presentment aforesaid, because he says that the said presentment is sufficient, and because he says that the said Circuit Court has and can obtain jurisdiction of the crimes, murder and manslaughter, by the presentment aforesaid, of the Prosecuting Attorney aforesaid, and that there is sufficient set forth in the presentment aforesaid to give the said Circuit Court jurisdiction of the said offenses, to hear, try and determine the same.

And this he, the said Sylvester Abel, Prosecuting Attorney as aforesaid, is ready to verify; wherefore he prays judgment, and that the said George W. Washburn may answer to the said presentment."

The Circuit Court overruled this plea to the jurisdiction, and the defendant then pleaded not guilty.

On the trial upon this issue, the prosecution called James Washburn, a child of defendant, seven years of age. The counsel for the defendant objected to his being sworn, on the ground that he was too young, and, from an examination of the witness by the Court, that he had been tampered with by his grandfather, James H. Young; but the Court overruled the objections, and the child was sworn.

Previous to his being sworn, the Judge asked the child his age, which he gave at seven years. He also asked

him if he knew it was wrong to tell a lie, to which he answered, yes; that he would be punished if he did, but did not say in what way he would be punished if he told an untruth. During his examination he stated to the Court that he had been told by his grandfather, who brought him here as a witness, that he must say his father murdered his mother.

After this examination, and being sworn, the child said he recollected the day his mother died; he went home from school and looked all through the house, but could not find her, but looked at the foot of the stairs and found her dead.

Considerable evidence was given to show difficulty between Washburn and his wife, resulting in a separation, and a bill filed by her for a divorce. The prosecution then offered in evidence what purported to be a warrant in a criminal case, issued by D. B. Greene, a Justice of the Peace for Ypsilanti, against defendant, upon which it was alleged he had been arrested; to the introduction of which the defendant's counsel objected, because it was irrelevant and immaterial, and because there was no return upon the warrant showing that it had ever been served; but the Court overruled the objection. It was then proved that Greene was a justice of the peace at the time the warrant bore date, and that he signed the same as justice, but the contents of the warrant were not read to the jury.

The prosecution then called D. A. Wise, a constable, by whom they offered to prove the service of the warrant, which was objected to on the ground it was irrelevant and immaterial, and that they could not prove by parol what was done by virtue of the warrant; which objections the Court overruled, and the witness testified as follows:

."I reside in Ypsilanti; am a constable, and was in March last; I served the warrant here produced on Washburn in March last, at Mooreville, and arrested him; told

him contents of warrant; I don't remember of reading the warrant to him."

On his cross-examination he said:—"I was employed by Joslin to go after Washburn; I never made any return on the warrant; I never took Washburn to the office of the justice who issued the warrant; I took him to Joslin's office; I supposed the matter adjusted between Washburn and his wife; I let him go on my own responsibility; supposed the matter was settled; never arrested him again on the warrant."

Other objections were taken to rulings on the admission of evidence in the course of the trial, but as they are not specially noticed in the opinion, it is not deemed important to state them here.

The jury found defendant guilty of manslaughter.

In this Court the case was twice argued — first, upon all the questions appearing in the record, and second, a re-argument was had by direction of the Court, upon the objections taken to the information. Only the second argument is here given.

*O. Hawkins*, for plaintiff in error:

All penal statutes must be construed strictly.—8 *Pick.* 573; 5 *Wheat.* 95. Penal statutes are never extended by construction, when the life, liberty or property of the citizen is concerned, nor by implication; and when there is doubt in regard to the construction to be given, it is always given in favor of the defendant.—17 *Mass.* 362; 5 *Pick.* 420; 8 *Barb.* 603, 605; 2 *Story*, 369, 203; 4 *Port.* 410; 2 *Mass.* 127; *Whart. Cr. Law*, 364; 7 *Pet.* 462; 16 *Me.* 256.

All penal statutes are to reach no further than their words; and no person can be made subject to them by implication. — 6 *Vt.* 215; 10 *Vt.* 590; 1 *Bald.* 101; 19 *Conn.* 292.

No offense is to be brought by construction within

the statute while it falls not *within all its words.*—2 *Haw. P. C.* 188, § 16 ; 2 *Gall.* 18; 1 *Chitty Cr. Law,* 283 *and note.*

Where the statute provides a mode of procedure, *only* that which the statute prescribes can be followed.—1 *Bish. Cr. L.* page 150, *and note* 1.

And when there is a condition annexed in the statute, before the Court can take jurisdiction, it must affirmatively appear by express averment that the condition has been complied with.—8 *Port.* 99, 104.

It is not necessary to set up the defense by way of plea. It is a jurisdictional fact, and good in arrest of judgment or on writ of error; and the Court is bound to notice · it.—3 *How. Miss.* 34.

2. That there is no oath as required by the statute, is plain. The oath required by the law referred to, is a substitute for the oath administered to the Grand Jury. The Court will look at the object of the law in requiring the oath, taking it in connection with the fact the law requires an examination before a magistrate for the offense charged, so that the person making the oath can be advised of the truth of the allegation.

An oath is defined to be a solemn affirmation, made with an appeal to God for the truth of what is affirmed, &c. And a false oath is called perjury. Tested by this rule, could perjury be assigned upon the affirmation attached to this information? We submit it could not, for it would throw the burden on the prosecutor to prove that the affiant had *no reason to believe, nor did not believe the information to be true.* The affirmation here would not bear the test in civil cases. It would not be good to a plea in abatement or a plea to the jurisdiction; and shall it be said that a man may be put on trial for his *life* on an affidavit which would be insufficient to recover a debt of five dollars, unless aided by a provision of the statute?— *Say. Rep.* 293; 2 *Strange,* 705 ; 5 *Hill,* 608.

*C. Upson, Attorney General,* for the People:

An averment that the defendant below had had an examination, or had waived such examination, was *not* necessary to give the Court jurisdiction.

The Circuit Courts of this State are courts of general criminal jurisdiction, and in such courts it. is not necessary to recite in the indictment or information all the facts which give the Court jurisdiction.—2 *Chand.* 199.

By section 8 of article 6 of the Constitution, the Circuit Courts have original jurisdiction in all matters, civil and criminal, not excepted in the Constitution, and not prohibited by law. By § 3418, Comp. Laws, said. Circuit Courts are to have and exercise original and exclusive jurisdiction "of all prosecutions in the name of the People of this State, for crimes, misdemeanors, offenses and penalties, except in cases where exclusive or concurrent jurisdiction shall be given to or possessed by some other Court or tribunal, in virtue of some statutory provision, or of the principles and usages and law." By sec. 1 of act No. 138, Laws 1859, page 391, Circuit Courts possess and may exercise the same power and jurisdiction to hear, try and determine prosecutions upon informations for crimes, misdemeanors and offenses, to issue writs and process, and do all other acts therein, as they possess and may exercise in cases of like prosecutions upon indictments; and by same act all informations are required to be filed during term in the Court having jurisdiction of the offense specified therein, by the Prosecuting Attorney of the proper county as informant, be signed by him, and be verified by his oath or the oath of the complainant, or some other person.

The presumption of law, then, is, when an information is filed in court by the Prosecuting Attorney of the county, that it is legally done; that the examination of the defendant has been had or waived, and consequently that the

Court has jurisdiction the same as when an indictment is presented by the grand jury in open court, and filed, the presumption is that it is legally presented, that the jurors were properly summoned, legally qualified and competent, and that twelve or more of them concurred in the finding; which facts, though essential to the lawful finding and presentment, are not necessary to be set forth in the indictment.—*Thayer v. People*, 2 *Doug. Mich.* 417 ; 6 *Met.* 224; 6 *A. & E.* 236, 247 ; 7 *Ill.* 540 ; 8 *Ill.* 644 ; 4 *Dev.* 305 ; *Whar. Cr. L.* §§ 228, 230.

Whether an examination has or has not been had, is not a question of pleading in the first instance — a matter to be averred or alleged in the information in order to confer jurisdiction — but a question of fact to be raised by the defendant or not at his option, which fact is always within the knowledge of the defendant, and if he claims that this right or privilege has not been allowed to him, and will insist upon his right to it, he can and should do so when he is arraigned on the information ; and if he neglect to do this, he waives the irregularity, if any originally existed, and cannot after verdict assign it as error.— 6 *Met.* 224 ; 2 *Ired.* 153 ; 14 *Mo.* 94 ; 1 *Morris*, 332 ; 2 *Greene* (*Iowa*), 270 ; 1 *Yerg.* 206 ; 10 *Pick.* 477 ; 2 *Barb.* 427 ; 6 *N. Y. R.* 50 ; 2 *Comp. Laws*, §§ 6043, 6054 ; 1 *Bish. Cr. L.* § 72a, 2d ed.; *Whar. Cr. L.* §§ 472, 489, 3223, 324 ; 12 *Ark.* 190, 623, 630.

The fact that a prisoner has not been tried or examined before an examining court or magistrate, before the filing of an information against him, is a matter that may properly be pleaded in abatement or raised by motion to quash, in the nature of a plea in abatement, founded on affidavits, on an arraignment.—1 *Chit. Cr. L.* 445, 109 ; 4 *Me.* 439 ; 36 *Me.* 128 ; 4 *Denio*, 133 ; 1 *Mich.* 234 ; 7 *Gratt.* 673.

As a general proposition, whatever is pleadable in abatement is waived by the plea in bar of not guilty.

Objections to the persons composing the grand jury, or to the manner in which it is impanneled, are of this class, and we may by analogy properly include objections for want of an examination.—1 *Bish. Cr. L.* § 672a, 2d ed.; *Whar. Cr. L.* §§ 472, 537, 536; *Bac. Ab. Juries, A; Cro. Car.* 134, 147; 8 *S. & M.* 587; 12 *S. & M.* 68; 7 *Yerg.* 271; 10 *Yerg.* 527; 25 *Miss.* 203; 9 *Ala.* 10; 4 *Blackf.* 73; 5 *Blackf.* 75; 2 *Ired.* 101; 4 *Dev.* 305; 1 *Met.* 151; *Arch. Cr. Pl. by Jervis,* 77; *Comp. Laws,* §§ 6026, 6028, 6043, 6054.

By Constitution, art. 6, § 29, no person after acquittal upon the merits shall be tried for the same offense, and by §§ 5706, 5953, Comp. L., no person shall be held to answer on a second indictment for any offense of which he has been acquitted by the jury, upon the facts and merits on the former trial, &c.; yet who would insist that in such a case, the pleader had to anticipate it by averments in his information or indictment; and if in a case of former acquittal or conviction, on the trial of a subsequent indictment or information for the very same act or offense, the defendant failed to plead it or offer it in evidence, and should be convicted and sentenced, who would doubt the legality of the conviction and sentence, and how could the defendant allege it as error on the record?

If an examination of defendant before a magistrate, or a waiver, &c., of the same, had been alleged in the information, it clearly would not have been necessary to have proved it on the trial. It can not then be material here, nor be assigned as error. After verdict, by our statute, no information shall be held insufficient for want of the averment of any matter not necessary to be proved.—*Comp. L.* §§ 6054, 6043.

The law of 1859 only requires a statement of the offense charged in the information with the same fullness and precision, in matters of substance, as is required in indictments in like cases, and did not introduce any new rule

of pleading, to show how the defendant became liable to be proceeded against by information. To require the Prosecuting Attorney to show by allegations in his information that he had by a preliminary examination become legally authorized to file an information against the defendant, would be analagous to requiring grand jurors to aver in each indictment they found and presented, the facts by which they became legally organized and authorized to find and present such indictment against such defendant.

But the want of an averment in the information of a prior examination of the defendant, could not have tended to the prejudice of the defendant, and, by our statute, no information is to be held invalid by reason of any defect or imperfection in matter of form which shall not tend to the prejudice of the defendant.—*Comp. L.* § 6043; 2 *Seld.* 50.

The same principles of reasoning above given, will apply to the objection now first raised in this case to the verification. If the verification were in fact defective or irregular in form, it was waived by the defendant by pleading to the information and going to trial without objecting to it, and the objection now comes too late.

But the verification required by the statute can hardly be such as is necessary to make legal proof of all the facts averred in the information constituting the offense, as that would be unnecessary, and ordinarily would be an impossibility.

Seldom is an offense prosecuted where any one individual is personally cognizant of all the facts constituting it which are averred in the information.

The oath of the Prosecuting Attorney or of the prosecuting witness, that he knows the contents of the information, and that he has good reason to believe and does believe the same to be true as therein set forth, as is the form substantially given in this case, should be considered a sufficient compliance with the statute, and it is in fact almost the ordinary form of verifying bills in

chancery.   To require, that after a preliminary examination has been had before a magistrate, and he has held the accused for trial, as is the ordinary mode of proceeding, any stronger mode of verification should be made than was made in this case, is also absurd, in requiring literally, that legal proof of the commission of the offense by the accused should be twice adduced in open court, before he can be put upon his trial.   We are unable also to see how any rights of the defendant below could have been prejudiced by any form of verification; much less by the form used in this case.—4 *Dev.* 305; 7 *Gray*, 332; *Matter of Robinson's Estate*, 6 *Mich.* 137; 10 *Iowa*, 149.

CHRISTIANCY J.:

This was an information filed in the Circuit Court for the county of Washtenaw, containing several counts for murder and manslaughter.   The defendant put in a plea to the jurisdiction of the Court, alleging that it " has not or cannot obtain jurisdiction of said crimes, by presentation of the Prosecuting Attorney for the county; and because there is not any thing set forth in said presentment in regard to said offenses which gives jurisdiction to the Circuit Court for the county of Washtenaw to hear, try and determine the same."   To this plea a replication was filed asserting the sufficiency of the presentment, and that said Court has and can obtain jurisdiction by the said presentment, &c.; and the plea was overruled by the Court; whereupon the defendant pleaded not guilty, was tried, and convicted of manslaughter.

The overruling of the plea to the jurisdiction is assigned as error.   The two grounds urged in support of this assignment are, first, that it does not appear upon the face of the information that the prisoner had had a preliminary examination for the offense, nor that he had waived it, nor that he was a fugitive from justice; and second, that the information is not verified as required by the statute.

As to the first point, the plea does not deny the fact of a previous examination, or assert that none had been had, or that it had not been waived. The question, therefore, depending upon matter apparent on the face of the information, rests upon the same grounds, and is to be decided in the same way, as if raised by demurrer.

The statute (*Laws of* 1859, *p.* 393 § 8) provides that "no information shall be filed against any person, for any offense, until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such person shall waive his right to such examination: provided, however, that informations may be filed without such examination against fugitives from justice." It is not doubted that a defendant, unless a fugitive from justice (which is not pretended here) has a right to insist upon such examination before he can be put upon his trial, or called upon to answer the information. But the statute is express that he may waive this right; and we think he may waive it when called upon to plead to the information, as well as when brought before the magistrate for examination. It is not a matter which goes to the merits of the trial, but to the regularity of the previous proceedings. If he make no objection on the ground that such examination has not been had or waived, he must be understood to admit that it has been had, or that he has waived or now intends to waive it. If he intends to insist upon the want of the examination, we think he should, by plea in abatement, set up the fact that it has not been had, upon which the prosecuting attorney might take issue, or reply a waiver; or he must, upon a proper showing by affidavit, move to quash the information. The latter is the simpler course. The Circuit Court is a court of general criminal jurisdiction; and the proceeding by information instead of indictment is not, under this statute, an exceptional or special one, but the general mode provided for the prosecution of

offenses. We can therefore see no more satisfactory reason for requiring this preliminary examination or its waiver to be set out in the information, than for averring, in an indictment, that the grand jury was composed of at least sixteen competent grand jurors, or that the indictment was found by at least twelve (*Comp. L.* §§ 6014 *and* 6026), or any other fact essential to the constitution of a legal grand jury. We cannot think it necessary, on the trial for an offense, to prove the fact of such examination or waiver, more than on the trial under indictment to prove the preliminary matters referred to. The same rule should apply to both; and we think such is the effect of the language of the fourth section of the act of 1859. If not necessary to be proved, it need not be alleged. *Comp. L.* § 6054.

. It is further objected that the information is not verified as required by the statute. The statute requires it to be "verified by the oath of the prosecuting attorney, complainant, or some other person." It is verified in this case by the affidavit of the prosecuting attorney, "that he knows the contents of the foregoing information, and that he has good reason to believe and does believe the same to be true as therein set forth."

The statute must be construed with reference not only to its language, but its object as gathered from its various parts, and other statutes having reference to criminal prosecutions. As already noticed, it provides that no information shall be filed without a previous examination, unless waived. For the purpose of instituting such examination the statute (*Comp. L.* §§ 5978, 5979) requires that the complainant shall be examined on oath, and other witnesses produced by him; and "if it shall appear that any criminal offense has been committed, the magistrate shall issue his warrant," &c. Here, doubtless, it is *evidence* which is contemplated: and the facts and circumstances are to be stated by the complainant and his witnesses, as the object is to make it appear to the satisfaction of the magistrate that

the offense has been committed by the defendant, to authorize the issuing of a warrant. When the defendant is brought before the magistrate on the warrant, the complainant and other witnesses on the part of the prosecution are to be examined on oath in the presence of the prisoner (*Comp. L.* § 5989). "If it shall appear to the magistrate that an offense has been committed, and that there is probable cause to believe the prisoner guilty thereof," he is to be required to recognize, &c. (*Comp. L.* § 5994). Here again the object is evidence, and only facts and circumstances within the knowledge of the complainant and the witnesses are to be stated, *as upon a trial.* It would seem to be a useless ceremony, after these two examinations into the facts and circumstances, to require them to be again shown before the information can be filed by the prosecuting attorney: yet if any thing more is meant by the verification of the information than an affidavit upon belief, it would be necessary, in most cases, to recall the witnesses, or most of them; as all the facts and circumstances necessary to establish the guilt of the prisoner are seldom known to a single witness.

But the statute does not here contemplate, as in the other cases referred to, an "examination," but simply a "verification" of the information; and this is to be by the "Prosecuting Attorney, complainant or some other person." Why mention the Prosecuting Attorney at all if the facts are to be sworn to on personal knowledge? He is no more likely to have personal knowledge of such facts than any other person, though he is, from his official duties, more likely to be informed of the nature of the evidence. The statute seems to contemplate the verification by a single person only, and makes no provision for compelling the attendance of witnesses for such purpose, or for requiring them to testify.

The object of this verification is not, as in the "examinations" alluded to, to satisfy the court that the defendant is

guilty. It is not for the purposes of evidence, which is to be weighed and passed upon; but only, as we think, to secure good faith in the institution of the proceedings, and to guard against groundless and vindictive prosecutions: and this object is fully met by the previous examinations and a verification upon belief. We think, therefore, the plea to the jurisdiction was properly overruled.

Several exceptions were taken on the trial to the admission of testimony, and to the form of certain questions. But with the exception of those presently to be noticed, the ruling of the Court was so clearly correct as to require no particular notice here.

The objection to the testimony of James Washburn, a child of seven years of age, cannot be sustained. He was competent to testify, but the question of his credibility was for the jury, and the defendant must have had the full benefit of his objection before the jury.

The prosecution offered in evidence what purported to be a warrant in a criminal case, issued by D. B. Greene, a justice of the peace, against the defendant, upon which it was alleged the defendant had been arrested; which the defendant objected to as irrelevant and immaterial. The objection was overruled, and defendant excepted. It was then proved that Greene was a justice, and his signature proved; but the contents of the warrant were not read, nor did the prosecution show for what offense it was issued, nor upon whose complaint. The prosecution offered to prove by Wise, the constable, that he served the warrant: this was objected to, the objection overruled, and exception taken. The constable then testified that he served the warrant, and told the defendant the contents, but did not remember reading it to him. Here the direct examination of the witness closed. From the mode in which the warrant was offered, and proof of service made, it is not easy to see for what legitimate purpose this evidence could have been introduced; and had there been no cross-examination, we should have been inclined

to look upon it as calculated to prejudice the defendant before the jury, by an attempt to show that he had been charged with, and arrested for, another criminal offense, for which he was not on trial. Had it appeared that the warrant was for an offense charged to have been committed upon his wife, with whose murder he was now charged, or that it was issued upon her complaint, it would have been admissible, as tending to show hostile relations existing between them, which might bear upon the question of motive, and tend to prove malice. But the prosecution had not shown this. The defendant, however, as we think, supplied this deficiency by drawing out, on cross-examination of the constable, the following testimony: "I was employed by Joslin to go after Washburn: I never made any return to the warrant: I never took Washburn to the office of the justice who issued the warrant: I took him to Joslin's office: *I supposed the matter adjusted between Washburn and his wife:* I let him go on his own responsibility: I supposed the matter was settled: never arrested him again on the warrant." From this we think it apparent, inferentially, indeed, but satisfactorily, that the warrant had been issued on the charge of some offense upon the wife, which the constable understood to have been settled, and therefore let the prisoner go: and thus the testimony went to corroborate a considerable amount of other testimony showing difficulty or unpleasant relations between defendant and his wife previous to the commission of the offense.

We are therefore satisfied that there was no error in the judgment or proceedings of the Circuit Court, and the judgment must be affirmed.

MARTIN CH. J. and MANNING J. concurred.

CAMPBELL J.:

I think there is no error in any of the rulings in this case except as they relate to the jurisdictional objections to the information. I am of opinion that those objections are well

taken. The language of the statute, when viewed in the light of the previous law, seems to require a full verification, and a direct allegation of the preliminary conditions, in order to avoid results which must lead in many cases to serious evils which have always been considered important enough to be carefully guarded against.

The law has always been solicitous to preserve parties from the disgrace of an arraignment on a criminal charge, without at least *prima facie* proof beforehand of their guilt. Informations could, indeed, be filed at common law by the crown authorities for misdemeanors. But such accusations never were deemed infamous, like charges of felony, and a party need not, usually, respond in person, and was not generally arrested in the first instance, if at all. Yet even with these palliations, the practice became so deservedly odious that our American constitutions have in several instances prohibited it entirely, while in England no one but the Attorney General—who rarely interferes except for what are strictly public grievances—can resort to this method of complaint without the previous leave of the Court obtained on a full showing upon affidavits served on the respondent. And the power, thus restricted, has not been regarded with universal favor. It is still broad enough to lead to oppression and injustice. Our constitutional provisions were all adopted long after the English statutes which restricted the practice.

The design of grand juries was to protect the citizen from unfounded charges by preventing his being put to answer any accusation which had not previously been proven to the satisfaction of an impartial tribunal by evidence which, if not rebutted or explained, would justify a conviction. This protection has been deemed important enough to be secured by the most solemn sanction of bills of rights and fundamental charters. The abolition of grand juries has never been urged on the ground that this caution was unnecessary. The objections to those tribunals have generally,

if not universally, been founded upon the idea that they did not, in practice, afford the protection against unfounded charges which justice and policy require. The history of the movement in this State, and the language of the statute now under consideration, can hardly be reconciled with a design to take away any of the ancient safeguards without supplying an equivalent.

The only effect of the statute on grand juries is, to make their summoning depend upon the discretion of the Court, instead of requiring them to be called at every session. But in authorizing informations to be used in lieu of indictments in all classes of offenses, certain conditions are imposed, which must be complied with beforehand, and which are in their nature jurisdictional, and calculated to insure the safeguards against unjust accusations which the old system was intended to maintain. The statute declares that "No information shall be filed against any person, for any offense, until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such person shall waive his right to such examination." An exception is made against fugitives from justice, who may be informed against without examination, and are to be demanded by the Executive upon information, as formerly upon indictment.

It is also provided that upon filing an information the same process and other proceedings shall be resorted to as in cases of indictment. And, if an information can be filed on belief only, and need not show a preliminary examination, nor the reasons why it has not been had, a party has no security whatever against being subjected to arrest, imprisonment, and the disgrace of a public arraignment and trial, when there is no legal evidence whatever of his guilt, or of its probability. The presumption that a prosecutor will not abuse his power has never been considered a sufficient protection to private character and liberty. And in accusations of murder, where an indicted person is not bailable,

the consequences are monstrous. If this interpretation is correct, the law would conflict directly with the constitutional provision which prohibits arrests without warrant founded on oath — which has never been deemed to be satisfied by a mere heresay averment of belief. But the general rules applicable as well to indictments as to informations are sufficient to dispose of the questions before us.

It is a well settled rule in all criminal cases, that every proceeding, in order to be valid, must appear to be within the jurisdiction. No indictment is valid unless the records of the Court show it to have been found by a lawful jury. If removed to another court than that where it was found, the caption must show all of the record essentials, and if the record does not contain enough to show that the indictment was found lawfully, no conviction can be maintained upon it. These jurisdictional requisites do not appear in the *body* of the indictment, because a grand jury could not by its finding either affirm or deny effectually that which is evidenced by the record itself, and which must therefore stand by the record. And in like manner, where leave of the Court is necessary before an information is filed, the record itself shows whether leave was or was not granted, and it need not appear in the pleading.

But whenever the jurisdictional fact is one which does not otherwise appear of record, and the power of the Court to proceed depends upon conditions and facts not previously established before it, I have found no rule exempting the prosecutor, or accusing body, from the necessity of alleging them in the instrument of accusation, or which compels a defendant to make his objection in the outset. On the contrary, there are authorities which can not be reconciled with any such rule, and others from which its illegality may be fairly implied.

Thus, at common law offenders must generally be indicted in the county where the offense is alleged to have been committed. But under various statutes courts sitting in

other counties where the offenders were apprehended or were in custody might have indictments found and tried before them. The cases arising under these statutes exemplify the rule requiring what is not of record to be averred, and dispensing with allegations of what is already of record. In *Berwick's Case*, *Foster C. L.* 12, it being objected to an indictment for treason that it did not aver the defendant to be in custody in the county where it was found, while the offense was laid to have been committed in another county, the Attorney General replied that it appeared on the record as it then stood, that he had been so in custody; and the indictment was maintained. And in *Regina v. Whiley*, 1 *C. & K.* 150, a similar objection was overruled on the ground that the caption of the indictment would show the custody. But in *Rex v. Fraser*, *Moody C. C.* 407, where a party was indicted in a county *where he was apprehended*, although evidence was given on the trial that he was apprehended there, yet the Court held the indictment fatally defective because it contained no such allegation. In *Regina v. Feargus O'Connor*, 5 *Q. B.* 34; and in *Regina v. Stowell*, 5 *Q. B.* 44, similar rulings were made in regard to allegations of venue in indictments preferred in the Central Criminal Court; a marginal venue not being held sufficient.

In *Regina v. Burnby*, 5 *Q. B.* 348, where a statute prohibited any indictment to recover certain penalties without leave of the Commissioners of Customs, objection was taken to an indictment for perjury that it alleged no such leave granted, and the Judges, overruling it on the ground that perjury was not within the statute, intimated that if it had been the objection would have been well taken.

In New Hampshire the law has been settled, clearly and directly, that these jurisdictional requisites must be averred and proved. A statute of that state giving justices of the peace power to try complaints for assault, authorizes them, when the aggravation of the case warrants it, to bind the respondent over for indictment. In the case of *The*

*State v. Hilton*, 32 *N. H.* 285, an indictment for assault was found which contained no averment of a previous complaint and examination. It was admitted on the trial that there had been a regular course of preliminary proceedings. But the court held the conviction bad for want of such an averment in the indictment. It was held that every jurisdictional matter must be averred and proved; and that such was the general rule. This case has been followed up by other decisions illustrating it, among which may be mentioned, *State v. Stevens*, 36 *N. H.* 59, and *State v. Bean*, 36 *N. H.* 122. They show that the averments must be full and accurate, and that they must be clearly proved.

Under our statutes none of the preliminary requisites of an information are entered of record, or in any way brought to the notice of the court, as an indictment and the previous impanneling of the grand jury must be. The journals make no allusion to them. If a defendant is bound over, the justice must return the examination to the clerk; but this is not done in open court, nor recorded. If a party waives examination no return is required. If charged as a fugitive no proceeding before a justice is necessary at all. And if the information may be drawn and sworn to as in the case before us, a party may be arrested and arraigned without any previous ceremony, or any reason for dispensing with it, in clear violation of the design of the statute. But as the Court could not proceed a step without the statute, I think it must adhere to the statutory conditions, and that the adherence should appear. As the statute says, "*no information shall be filed*" without an examination or waiver, I do not see how this waiver can be *subsequent* to the filing, nor how the validity of an information can be made to depend upon matter *ex post facto*. The information must be good or bad when filed; and jurisdiction cannot be made to depend on the chances of a respondent's acuteness in pleading.

The statute requires that "All informations shall be

verified by the oath of the Prosecuting Attorney, complainant, or some other person": *p.* 392, *Laws* 1859. If the allegations of jurisdictional facts are required, then this verification will supply in some degree to the Court the proof that the statute has been complied with, and that the defendant is not accused irregularly or without cause; and the danger of vexatious arrests will be very much lessened.

The question of the manner of verification becomes important in this view, as it is also in regard to the charge itself. And I have not been able to satisfy myself that a mere belief of the Prosecuting Attorney is enough to satisfy the statute. He is not bound to file an information unless he has good grounds for it, and if belief alone were sufficient there could be no occasion for providing that it may be verified by any one else. But the chief reason for any verification is undoubtedly to be found in the rule already referred to, which requires every criminal charge to be sustained by some responsible showing by *legal evidence.* No one could at common law be compelled to respond to an accusation of felony, unless it had been previously established by proof to the satisfaction of a jury—and this might be by the verdict of a Coroner's jury, or of a petit jury in a civil case, or by the indictment of a grand jury:—2 *Hale P. C.* 61, 150, 151; *Rex v. Maynard, Russ. & Ry.* 240; 1 *Chit. Cr. L.* 158, 163-4-5. And this action was not surmise, nor based on hearsay; but was founded on the same quality of evidence which is used in all courts of justice:— 1 *Chit. Cr. L.* 166, 318, 319; 4 *Bl. Com.* 301-2, *and Chitty's notes.* The same proof unexplained would probably convict him on the trial.

Even in regard to misdemeanors, where an information might be filed under the English practice, no rule is granted except upon such direct evidence as would, uncontradicted, make out the offense beyond a doubt. The rule is rigid, and requires the best evidence in kind and degree.—*Arch. Cr. Pl.* 76; *Rex v. Willett,* 6 *T. R.* 294; *Rex v. Williamson,*

3 *B. & Ald.* 582; *Rex v. Bull*, 1 *Wils.* 93; *Rex v. Hilbers*, 2 *Chit. R.* 163; *Regina v. Baldwin*, 8 *A. & E.* 168; *Ex parte Williams*, cited 1 *Harr. Dig.* 2268; 1 *Chit. Cr. L.* 856, 857.

If a prosecutor does not comply with these requirements, he is left to his remedy by indictment.

When we consider the reasons of the old practice, and the great jealousy with which private reputation and liberty have been guarded by the same or by analogous means, it is impossible not to feel that all of these guards have been swept away unless the verification required by the statute is to be of the same nature as that of indictments and informations in England—that is to say, by the oath of some one or more persons who can of their own knowledge make proof of such facts as will, uncontradicted, show every essential element of the case, and bring it within the jurisdiction of the Court. Any thing short of this is in fact and in law no verification whatever, and perjury could not be assigned upon it. In further support of this view I refer to 4 *Com. Dig.* 636, *note b* (*Am. Ed.*); *Rex v. Justices of Somersetshire*, 1 *Man. & R.* 272; *Rex v. Dickinson*, *R. & Ry. C. C.* 150; *United States v. Coolidge*, 2 *Gall.* 364; 7 *B & C.* 514. These authorities are valuable, as showing how carefully private liberty is guarded against all charges not founded on the best legal evidence.

If it is urged that a previous examination would make a new verification unnecessary, the same suggestion would apply to an indictment. An indictment for felony without a previous complaint and examination is very uncommon. An examining magistrate may very properly commit on evidence of suspicion which would not justify a grand jury in finding an indictment. The rule of law requiring evidence to found a charge upon which shall make out a *prima facie* case, has always been independent of that which affects preliminary examinations. A magistrate is not bound by it, and a party bound over or committed cannot be assumed to

have anything more than reasonable grounds of suspicion made out against him.

This statute was made also with a direct view to the reclaiming of fugitives from justice; and an information verified on nothing but the Prosecuting Attorney's belief, and silent as to the absconding of the accused, would not be a sufficient foundation for such a demand under the act of Congress, and the decisions upon it.

The law does not require the information to be verified by one person alone, and does not require every fact to be sworn to by the same person. Under a practice which allows several counts, charging the offense in various ways, the verification can hardly be made consistently except by following the course of civil proceedings where, if the pleading is not specific enough, the facts and circumstances appear in affidavits appended. A verification, whether positive or on belief, which charges a person with different offenses —as murder and manslaughter—in all the phases of a technical information, is a very idle ceremony, and would not tend, if permitted, to encourage respect for the obligations of an oath.

I am of opinion that the information is bad in not showing the pre-requisites complied with, and in not being positively verified.

*Judgment affirmed.*