### MENZO SWART v. JAMES KIMBALL.

*Trespass on State lands—Trial by jury—Verification of information—False imprisonment—Error.*

Act 100 of 1857 (Comp. L. ch. 256) is tyrannical, oppressive, unconstitutional and void in so far as it authorizes persons charged with trespasses on State lands to be tried in some other county than that where the offense was committed.

The right of trial by jury involves the indefeasible right to be tried by a jury of the vicinage.

The provision in the Constitution of Michigan that "the right of trial by jury shall remain" means the right as it had become known to the previous jurisprudence of the State.

A person accused of crime cannot waive any essential of the right of trial by jury, and no substantial and beneficial incident of that right can be divested by legislation.

An affidavit attached to an information and stating that affiant has good reasons to believe and does believe the contents of the

information to be true, is not such verification as will warrant an arrest, especially where there has been no preliminary examination and a *prima facie* case made out.

An officer is not protected in what he does under the authority of a superior, if the latter acts under an invalid law.

In an action for false imprisonment, an averment that plaintiff incurred large expense in obtaining his liberation from imprisonment, is a sufficient allegation of special damages to sustain proof of the amount of the attorney fee.

In an action for false imprisonment it was shown that defendant had sought to obtain the re-arrest of the plaintiff. *Held* that the evidence was admissible, and as likely to aid the defendant as to injure him, if it was uncertain whether it was done in malice or in an honest belief of plaintiff's guilt.

Judgment will not be reversed for error that does not prejudice.

Error to Alpena. Submitted April 22. Decided April 28.

TRESPASS ON THE CASE for false imprisonment. Defendant brings error.

*Kelley & Clayberg* for plaintiff in error. An affidavit attached to an information, stating that affiant knows the contents of the above information and verily believes the same to be true as therein set forth, is a sufficient verification, *Mentor v. People* 30 Mich. 91; a verification of a positive charge by an oath according to the affiant's best knowledge and belief is enough to authorize a justice to issue a warrant, *State v. Hobbs* 39 Me. 212; *People v. Lynch* 29 Mich. 274; *Johnson v. Maxon* 23 Mich. 130; *People v. Hicks* 15 Barb. 153; *Pratt v. Bogardus* 49 Barb. 93; *Vannatta v. State* 31 Ind. 211.

*Turnbull & McDonald* for defendant in error. An information sworn to on information and belief is void if the statute requires the verification to be by some one who can testify to the facts, *Teachout's Case* 15 Mich. 346; *Proctor v. Prout* 17 Mich. 473; *Brown v. Kelley* 20 Mich. 33; *Hackett v. Wayne Circ. Judge* 36 Mich. 335; one who procures or advises an illegal arrest is liable in trespass for false imprisonment, 2 Chit. Pl. 64; *Baird v. Householder* 32 Penn. St. 168; *Sullivan v. Jones* 2

Gray 570; *Clifton v. Grayson* 2 Stew. (Ala.) 412; *Cole v. Radcliff* 4 W. Va. 332; *Allen v. Greenlee* 2 Dev. 370; *Luddington v. Peck* 2 Conn. 700; *Bauer v. Clay* 8 Kan. 580; *Painter v. Ives* 4 Neb. 122; *Poulk v. Slocum* 3 Blackf. 421; *Lansing v. Case* 4 N. Y. Leg. Obs. 221; Cooley's Torts 127, 132; damages in false imprisonment cover costs incurred in obtaining a discharge, 3 Wait's Actions 322; *Parsons v. Harper* 16 Gratt. 64; *Bonesteel v. Bonesteel* 30 Wis. 515; *Clark v. Newsam* 1 Exch. 131.

COOLEY, J. This is a remarkable case on the law and on the facts.

By "An act for the better protection of the public lands, and to punish the cutting and carrying away of timber therefrom," approved February 12, 1857 (Comp. L. ch. 256), the cutting down or destroying or causing to be cut down or destroyed any trees standing or growing on any of the lands of the State, or lands held in trust by the State, or the taking and carrying away any trees or parts thereof, or any timber or lumber made therefrom, so cut or destroyed, when the same was willfully and knowingly done, and with intent to convert the same to the use of the party or his employer, was made a felony if the value of the trees etc. exceeded the sum of twenty-five dollars, and a misdemeanor when the value did not exceed that sum. The maximum punishment for the felony was five years' imprisonment in the State prison. The fifth section of the act provided that "All prosecutions under this act may be either by indictment or information in the county where the offense is committed; or, if it be committed in the Upper Peninsula, in any county in said peninsula; if in the Lower Peninsula, in the county where the offense was committed, or in such other county as the Commissioner of the State Land Office, or the Attorney General, shall, by written instructions to the prosecuting attorney thereof, direct."

The sixth section provides that "Such information shall be brought by the Attorney General or by the prosecut-

ing or district attorney of the county where the same is to be prosecuted. It shall set forth the offense with reasonable certainty; shall not be filed nor have effect without an affidavit of some credible person verifying the charges therein contained, which shall be filed at or before the time process shall issue for the arrest of the accused, nor until the circuit or district judge of the court shall, by an indorsement thereon, allow the same to be filed. When so allowed, the proper prosecuting attorney shall take out a warrant from the office of the clerk, in the usual form as near as may be, for the arrest of the accused; and whether the prosecution be by indictment or information, the warrant of arrest may be directed to the sheriff of the same or any other county, and may be served anywhere in the State, by arresting the offender and committing him for trial in the proper county." The further provisions relate to forms and methods of procedure, and need not be recited here.

In the summer of 1878 Mr. Swart, the plaintiff in error, was in the employ of the State land department in looking after trespasses on State lands, and was informed by reports of his predecessor, then on file or of record in the Land Office, that a trespass had been committed by Kimball, the defendant in error, in the county of Alpena. He went to Alpena, partly to inquire into this trespass, and while there claims to have obtained evidence of a further trespass by Kimball, committed more recently. He went to see Kimball and endeavored to make him settle for the alleged trespasses, but did not succeed. The accounts given by the two parties as to the interviews between them differ very considerably; that of Swart only showing an endeavor in a proper way to obtain a settlement for the timber cut, while Kimball gave evidence tending to show that he denied having committed any trespass, and that Swart made threats of criminal prosecution against him with the evident purpose to extort money from him whether innocent or guilty. The attempts at a settlement failed, and Swart

proceeded to institute a prosecution. He went to Lansing, 250 miles or so from the county of the alleged trespass, and there procured an information to be drawn against Kimball, to which the Land Commissioner appended an order to the prosecuting attorney of Ingham county, directing him "to prosecute the foregoing information in the county of Ingham and State of Michigan." The following is the verification appended to the information:

"STATE OF MICHIGAN, }
    COUNTY OF INGHAM,   } ss.

Menzo Swart of the village of Flushing in the county of Genesee being duly sworn deposes and says: *First*, that he has heard read the foregoing information, and that he knows the contents of the same; *second*, that he knows the contents of the foregoing information, and that he has good reason to believe and does believe the same to be true as therein set forth. *Third*, and further saith not. Subscribed," etc.

Upon the information thus verified, and without any further or other evidence that an offense had been committed, or that the accused was probably guilty of any violation of law, a warrant was issued out of the circuit court for the county of Ingham, commanding the arrest of Kimball, and his production in that court to answer the information. Kimball was arrested by virtue of this warrant by an officer, who arrived with him in Mason the third day thereafter, and immediately placed him in jail, where he remained for thirteen days. At the end of that time he obtained legal assistance and applied to the Hon. Geo. M. Huntington, circuit judge, for the writ of *habeas corpus* to inquire into the legality of his imprisonment, and the writ having been granted to him, he was discharged on a hearing. In the August following he brought suit against Swart for false imprisonment in causing his arrest and incarceration, and obtained judgment, and this judgment is now before us for review on exceptions.

The record in this case does not show on what ground

Kimball was discharged by the circuit judge; whether it was because in his opinion the act under which the prosecution took place was invalid, or because the proceedings under it were not in conformity to its provisions. The circuit judge who tried the action for false imprisonment seems to have sustained the act. In this he was plainly in error. The act is not only tyrannical and oppressive in the last degree, and such as no legislature, even if its power was ample, should ever have passed, but it is manifestly in conflict with one of the plainest and most important provisions of the Constitution.

The Constitution of the State provides that "The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases, unless demanded by one of the parties in such manner as shall be prescribed by law." Article vi. § 27. The right is to *remain.* What right? Plainly the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State. *Underwood v. People* 32 Mich. 1. The right is not described here; it is not said what shall be its incidents; it is mentioned as something well known and understood, under a particular name; and by implication at least, even a waiver of its advantages is forbidden. If the accused himself cannot waive them, plainly the Legislature cannot take them away. The next section of the Constitution repeats the guaranty of this method of trial "in every criminal prosecution," and nothing is better settled on the authorities than that the Legislature cannot take away a single one of its substantial and beneficial incidents; Opinions of Judges 41 N. H. 550; *Ward v. People* 30 Mich. 116; and even the accused cannot waive any one of the essentials. *Work v. State* 2 Ohio (N. S.) 296; *Cancemi v. People* 18 N. Y. 128; *Hill v. People* 16 Mich. 351; *Allen v. State* 54 Ind. 461.

Now that in jury trial it is implied that the trial shall be by a jury of the vicinage is familiar law. Blackstone says the jurors must be "of the *visne* or neighborhood;

which is interpreted to be of the county where the fact is committed."* 4 Com. 350. This is an old rule of the common law; Hawk. P. C. b. 2, c. 40; 2 Hale P. C. 264; and the rule was so strict and imperative that if an offense was committed partly in one county and partly in another, the offender was not punishable at all. Hawk. P. C. b. 2, c. 25; 1 Chit. Cr. L. 177. This overnicety was long since dispensed with, but the old rule has in the main been preserved in its integrity to this day. It is true that Parliament as the supreme power of the realm made some exceptions, which are enumerated by Mr. Chitty in his treatise on Criminal Law, vol. 1 p. 179, the chief of these being cases of supposed treason or misprision of treason examined before the Privy Council, and which under a statute of Henry VIII might be tried in any county, and offenses of the like character committed out of the realm, and which by a statute of the same arbitrary reign were authorized to be tried in any county in England. But it is well known that the existence of such statutes with the threat to enforce them was one of the grievances which led to the separation of the American colonies from the British empire. If they were forbidden by the unwritten constitution of England, they are certainly unauthorized by the written constitutions of the American states, in which the utmost pains have been taken to preserve all the securities of individual liberty. It has been doubted in some States whether it was competent even to permit a change of venue on the application of the State, to escape local passion, prejudice and interest; *Kirk v. State* 1 Cold. 344; *Osborn v. State*, 24 Ark. 629; *Wheeler v. State* 24 Wis. 52; but this may be pressing the principle too far, *State v. Robinson* 14 Minn. 447; *Gut v. State* 9 Wall. 35. But no one doubts that the right to a trial by a jury of the vicinage is as complete and certain now as it ever was, and that in America it is indefeasible. 1 Bish. Cr. Law [2d ed.] § 552; Whart. Crim. Law § 277; *Paul v. Detroit* 32 Mich. 108; *Ward v. People* 30 Mich. 116.

If we needed evidence of the value of the right we would find abundance of it in this record. A citizen is arrested on a criminal accusation and carried off to a distant part of the State for trial. If he is poor and relies upon many witnesses for his exculpation, this will almost of necessity put it out of his power to make a complete defense: if he is a man of moderate means, the defense may ruin him. The State makes no provision for paying the expenses of witnesses for the defense except on a showing that it is impossible for the defendant, for want of means, to procure their attendance; and we all know that when provision is made it is meagre and imperfect, and leaves to the prosecution a great advantage. Especially is this advantage great when the State officers take charge of the prosecution with abundant means, as they are likely to do when State property is involved. But a disadvantage quite as great as the want of means is likely to be experienced in the fact that the accused is away from his friends and among strangers who will know of him only this; that he is under arrest upon presumptive proof of being a felon. Of what avail is a man's good reputation to him under such circumstances, when the neighbors who know it are at a distance, and when the very accusation among strangers will necessarily fix upon him a strong suspicion?

We have not the slightest hesitation in declaring that the Act of 1857 so far as it undertakes to authorize a trial in some other county than that of the alleged offense, is oppressive, unwarranted by the Constitution, and utterly void. But plain as this is, it is no plainer than that the poor and insufficient provision it makes for the protection of accused parties was not observed in this case.

When this act was passed, the Grand Jury was still retained as a part of the judicial system of the State. When the act for the trial of criminal accusations upon informations was passed two years later, full provision was made for an examination of a criminal charge before

a magistrate, and an information was not suffered to be filed until the accused had had opportunity to be heard, and the examining magistrate had decided that a *prima facie* case was made against him. Comp. L. § 7944. This examination was supposed to give the accused all the protection and even more than he would have from a grand jury. An information filed without this examination would be dismissed as unwarranted. *Washburn v. People* 10 Mich. 372; *Annis v. People* 13 Mich. 511.

The Act of 1857 did not provide for any such preliminary examination, and there may be a question whether the general law respecting informations in criminal cases applies to these trespasses on public lands. But regardless as the Act of 1857 was of private rights, it did not assume to permit a man to be arrested and incarcerated in prison without some evidence of his guilt. There must be, the act declared, "an affidavit of some credible person verifying the charges" contained in the information. Charges are not verified by an affidavit that somebody is informed and believes they are true. This is mere evasion of the law: the most improbable stories may be believed of any one, and the man most free from any reasonable suspicion of guilt is not safe if he holds his freedom at the mercy of any man three hundred miles off who will swear that he has been informed and believes in his guilt. It is easy to tell falsehoods, and those who are least fitted to judge of their credibility are generally the very persons who will believe them because they are told. But to substantiate charges within the meaning of the law evidence is required, and not merely suspicions or information or beliefs. Bish. Cr. Pro. §§ 716–719; *Commonwealth v. Lottery Tickets* 5 Cush. 369; *Brown v. Kelley* 20 Mich. 27; *People v. Judge of Wayne Circuit* 36 Mich. 334. It is said that an information thus verified was sustained in *Washburn v. People* 10 Mich. 372; and so it was; but that was an information filed after the evidence of guilt had been made on preliminary

examination; and the verification was required only by way of showing good faith in the prosecution, and not to make out a *prima facie* case as this is. The Constitution itself expressly requires a showing of cause before warrant shall issue. Article vi. § 26. The arrest in this case would therefore have been unwarranted even if the law had been valid.

The justification of Swart having failed utterly, it remains to be seen whether he was injured by any rulings of the circuit judge which could affect the amount of the recovery.

There is no room for saying that Swart was protected in what he did because he acted under the orders of his superior officer. The Land Commissioner could lawfully give no such orders, and Swart could lawfully obey none.

There was no error in allowing Kimball to prove that the expense of an attorney fee of $50 was incurred in obtaining his discharge. The declaration averred that plaintiff incurred large expense in obtaining his liberation from imprisonment, and this was a sufficient allegation of special damages for this purpose.

It is complained that the judge used the word *extortion* in connection with the attempts of Swart to bring about a settlement with Kimball. Perhaps it would have been better not to use the word; but whether there was an attempt at extortion would necessarily be judged by the jury upon the evidence given by Swart to show that he believed Kimball guilty. If he did believe it, he should have endeavored to obtain payment for the timber: if he did not, he was attempting extortion. A careful reading of the evidence does not satisfy us that any injustice was done to Swart in this regard.

There was some evidence introduced, however, which it is said was clearly erroneous. It was proved under objection that Swart subsequently endeavored to obtain new papers against Kimball in Ingham county, and that the circuit judge refused to permit the information to be filed. Swart might have done this of malice, which

would have been greatly reprehensible, or he might have done it in the belief that Kimball was guilty, which would render him blamable only as he ought to have known that this distant prosecution was illegal. But the proper construction of ambiguous conduct must always be for the jury. And we cannot help believing, after reading the record, that this evidence tended as much to aid Swart as to injure him: that it was quite as likely to lead to a belief in his good faith as in his purpose to injure and oppress. The award which the jury made was the very moderate one of $350, and this gives abundant evidence that the jury viewed the conduct of the defendant in the most favorable light. If, therefore, the evidence was improperly received we should think the case a proper one for applying the rule that error without injury shall not reverse the judgment. *Cummings v. Stone* 13 Mich. 70; *Sinclair v. Murphy* 14 Mich. 392; *Sheehan v. Dalrymple* 19 Mich. 239; *Slocomb v. Thatcher* 20 Mich. 52; *Hill v. Robinson* 23 Mich. 24. But my brethren all think the evidence was competent.

The judgment will be affirmed, with costs.

The other Justices concurred.