THE PEOPLE v. AUGUST FUHRMANN, HENRY JACOBS, AND CHARLES VOEGLER.

*Criminal law—Change of venue—Jury lists—Correction—Ordering return from city—Separate trials—Disqualification of prosecuting attorney—Homicide—Instructions to jury.*

1. The circuit courts have the right, upon cause shown, to change the venue in criminal cases on the application of the people; citing *People v. Peterson,* 93 Mich. 27.

2. Where a challenge to the array is interposed on the ground that an excessive number of jurors has been returned from certain townships, it is not error for the court to order the clerk to reduce the excessive lists by striking therefrom all names below the number appearing thereon to which said townships are respectively entitled; citing *Hewitt v. Circuit Judge,* 71 Mich. 287.

3. The charter of the city of Alpena (Act No. 249, Laws of 1871) provides for the election of a comptroller, who is *ex officio* assessor of the city; one supervisor in each ward, who is vested with all the powers of supervisors in townships, except as in the charter otherwise provided; and two aldermen in each ward. The comptroller, supervisors, and city attorney constitute a board of review. The charter contains no special provision as to the return of lists of persons to serve as jurors. On sustaining a challenge to the array on the ground, among others, that no persons were legally listed and returned from said city to serve as jurors, the circuit court directed the supervisors and aldermen of the several wards to return such lists. And it is held that under How. Stat. § 7554, which provides that "the supervisor and township clerk of each township, and the supervisor or assessors, as the case may be, and aldermen of each ward or assessment district in any city, shall, at the time appointed by law for the review of the assessment roll for each year, make a list of persons to serve as petit jurors * * * for the ensuing year," the proper officers were designated to return said lists; the Court distinguishing such a case from *Hewitt v. Circuit Judge,* 71 Mich. 287, where it was held that the provision of the charter of the city of East Saginaw creating the office of assessor, and

103 MICH.—38.

*requiring* such officer to make and return lists of persons to serve as jurors, superseded the general statute in that regard.

4. The order of the court recited that, by reason of the neglect of the supervisors and aldermen of the several wards of the city of Alpena, no names of persons qualified to serve as jurors had been legally returned from said city; that there was a large number of civil and criminal cases for trial by jury; and directed that said officers forthwith make return of such lists.    And it is held that, said officers not having, prior to that time, returned the proper lists, the duty to do so was a continuing one, and it was immaterial whether they made the return voluntarily, upon request, or upon the order of the court.

5. In the absence of a demand for a separate trial by one of several respondents jointly informed against for a felony, it is within the discretion of the court under How. Stat. § 9573, to direct a joint or several trial.[1]

6. Prior to the transfer of a criminal case to another county for trial, the prosecuting attorney of said county had been employed by the board of supervisors of the county in which the prosecution was instituted, at an agreed compensation, to assist in the trial of the case.    Objection was made to the prosecuting attorney participating in the trial in his own county.    It did not appear whether or not he was to receive compensation for such proposed service.    And it is held that the fact of his former employment did not disqualify him from participating in said trial; that 3 How. Stat. § 557, which provides that no prosecuting attorney shall receive any fee or reward from or on behalf of any prosecutor or other individual for services in any prosecution or business to which it shall be his official duty to attend, is aimed at employment by or receipt of fee or reward from individuals other than the public authorities.

7. Under the charge, as set forth in the opinion, the jury could not have been misled upon the question as to the burden of proof.

8. Under the evidence, the court was justified in instructing the jury that, if the respondents were guilty at all, they were

---

[1] How. Stat. § 9573, provides that, "when two or more defendants shall be jointly indicted for any felony, any one defendant requiring it shall be tried separately, and in other cases defendants jointly indicted shall be tried separately or jointly, in the discretion of the court."

guilty of murder in the first degree; citing *People v. Repke*, 103 Mich. 459.

Error to Alpena.    (Kelley, J.)    Argued October 25, 1894. Decided January 22, 1895.

Respondents were convicted of murder in the first degree, and sentenced to imprisonment in the State prison for life.    Judgment affirmed.    The facts are stated in the opinion.

*J. D. Turnbull,* for respondents.

*A. A. Ellis,* Attorney General, and *James McNamara,* Prosecuting Attorney, for the people.

McGRATH, C. J.    Respondents were convicted of murder. The venue was changed at the instance of the people from Presque Isle county to Alpena county, and error is assigned upon the order of removal.    The point is ruled by *People v. Peterson,* 93 Mich. 27.

Upon respondents' challenge to the array of jurors upon the ground that an excessive number of jurors had been returned from certain townships, and that no jurors had been legally returned from the city of Alpena, the court ordered the clerk to reduce the lists by striking off all names below the number appearing thereon to which each township was entitled, directed the supervisors and aldermen of the several wards of the city of Alpena to forthwith make return of a list of persons qualified to serve as jurors, and afterwards ordered a drawing from the lists so returned.    Respondents then made a second challenge to the array, alleging:

1. That the court had no authority to direct the striking off of the said names from the lists returned from said townships, etc.

2. That the court had no power to order the supervisors and aldermen to make the selection.

3. That the supervisors and aldermen had no power to make said selection.

4. That the court had no authority to order the drawing and summoning of said jury of 24 men.

5. That the names so selected and returned from the city of Alpena were selected and returned for the very purpose of the trial of this case, and under improper influences and circumstances, etc.

As to the first objection, the course pursued was that suggested in *Hewitt v. Circuit Judge*, 71 Mich. 287, 296.

As to the fifth objection, the order of the court, and what transpired at the time, expressly negative the allegations made.

As to the other objections, the statute provides that the supervisor or assessors, as the case may be, and aldermen of each ward or assessment district in any city, shall make a list, etc. How. Stat. § 7554. The city of Alpena elects a comptroller, who is its assessing officer, and each ward elects two aldermen and one supervisor. The latter exercises the powers of supervisors in townships, except as otherwise provided in the act. It is urged that under the charter of the city of Alpena[1] neither the supervisors nor aldermen are assessors, and that aldermen are not members of the board of review; that the comptroller of the city is the assessing officer, and that the statute (section 7554) contemplates that an assessing officer should assist in making the list. Section 7555 would seem to indicate that the lists are to be made by officers having some knowledge of the persons whose names are listed. The supervisor or assessor and aldermen of each ward are named, the contemplation being that the listing shall be done by local officers. In *Hewitt v. Circuit Judge, supra*, the charter of the city of East Saginaw created the office of assessor, and required that officer to make and return

---

[1] Act No. 249, Laws of 1871.

jury lists, and the Court held that there was nothing compulsory upon the Legislature as to how or in what manner lawful jurors' names should be returned to the box, and that the general law was of no higher or greater authority than any other enactment upon that subject. We think that the proper officers under the statute were designated by the court to return the lists.

There is no force in the objection that the court had no power to order the return of the lists. The statute provides that whenever, for any cause, jurors shall not have been drawn and summoned to attend any circuit court, such court may, in its discretion, order a sufficient number to be drawn and summoned, and that the court may direct from which townships or districts such jurors shall be drawn. How. Stat. § 7578. It was held in *Thomas v. People,* 39 Mich. 309, that the time for returning the lists was of no importance to litigants. Nor is the manner in which the lists are obtained by the clerk important, if procured from the proper source and through the proper channels. The order of the court recited that, by reason of the neglect of the supervisors and aldermen of the several wards of the city of Alpena, no names of persons qualified to serve as jurors had been legally returned from that city, and, "there being a large number of civil and criminal cases for trial by jury, it is ordered," etc. Not having, prior to that time, returned the proper lists, the duty was a continuing one, and it was immaterial whether they made the return voluntarily, upon request, or upon the order of the court.

The next contention is that the court erred in directing separate trials. The matter, under the statute, was in the discretion of the trial court. How. Stat. § 9573; *Stroh v. Hinchman,* 37 Mich. 490.

Objection is made to the participation of the Attorney General and Mr. James McNamara in the prosecution. The

Attorney General appeared at the request of the Governor, under the statute (How. Stat. § 286). Mr. McNamara was at the time the prosecuting attorney of Alpena county. Prior to the removal of the cause he had been appointed by the circuit court of Presque Isle county to assist in the prosecution, and the board of supervisors of that county had agreed to pay him a stipulated *per diem* for such service. After the removal to Alpena, it does not appear whether or not he was to receive any compensation. There is no presumption that he was. The fact of the former employment by Presque Isle county would not disqualify him. The statute is aimed at employment by or receipt of fee or reward from individuals other than the public authorities.

Exception is taken to the court's instruction that—

"From the evidence in this case, if these defendants are guilty at all, they must be guilty of murder in the first degree. There is no evidence in this case upon which a verdict of murder in the second degree, or any lesser grade of this crime, could rest."

That question has been fully discussed in *People v. Repke*, 103 Mich. 459.

Error is assigned upon the following instruction:

"Now, gentlemen, the respondents here bring forward the defense which is termed in the law an '*alibi*.' It means that when a person is charged with a crime he comes forward and claims and attempts to establish the fact that he was somewhere else at the time of the commission of the crime, some other place than that where the crime was committed; that is what '*alibi*' means; and that is one of the defenses that these parties here have brought forward and insist upon. I say to you, gentlemen, it is a perfectly legal and legitimate defense, and there is nothing discreditable, or there is nothing in the fact that they attempt to prove this defense of an *alibi* that should militate against them. If it is established, it is a complete defense; and they have attempted in their defense to establish the fact that they were not present on the night in question, at the time and place of the killing of Albert Molitor. And in truth it would require no illustration to satisfy your minds

that, if they were not there, if they were miles away, without knowledge of its commission, they would not be guilty."

There is no doubt but that, if this charge stood alone, or was so separated from the other portions of the charge as to impress the jury with the idea that this defense was to be treated and considered separately, that the burden was upon the respondents to establish the *alibi*, and, if not so established to their satisfaction, it could not be considered, it would be erroneous. Before giving the instruction complained of, the court, however, had repeatedly instructed the jury as to the burden of proof and the presumption of innocence; that the burden was upon the people; that the people "should establish every essential requisite by evidence which removes from your mind every reasonable doubt;" that—

"Parties charged with crime, and brought to the bar of this court to be tried, *are not required to vindicate or establish their innocence.* They have a right to stand mute. Under the law of the land they have a right to say to the people, 'You must establish our guilt;' and that is the law in this case. The people assume the burden of establishing the guilt of these defendants to your satisfaction beyond a reasonable doubt. * * *

"The defendants in this case, standing here, charged as they are by the people with the commission of this crime, are entitled to what the law defines to be the presumption of innocence. These defendants are entitled to that presumption. They start out in this case surrounded with that presumption. It is one of the safeguards that the law has thrown around accused persons; and the burden of proof is on the people, or the State, to show the guilt of the accused beyond a reasonable doubt. I instruct you, in this case, that the law presumes these defendants to be innocent of the crime charged until that presumption is overcome by evidence which satisfies and convinces your minds of their guilt, or of the guilt of one or more of them, beyond a reasonable doubt. In other words, this presumption accompanies these defendants through and at every step in this case, and applies to every essential requisite of the crime of murder. And this presumption

of innocence must be so absolutely and conclusively over-come by the people's evidence that there remains in your minds no reasonable doubt of their guilt. You must be able to say in your careful deliberations, and in the weigh-ing of the evidence, that there is no rational theory on which the evidence can be reconciled but that of the defendants' guilt."

After giving the instruction objected to, the court said to the jury:

"As I have said to you before, gentlemen, you will not be warranted in convicting these defendants unless the evidence in this case convinces your minds of their guilt beyond a reasonable doubt, as I have defined it."

Again, at the close of the charge, the court said:

"If they are guilty of this crime under the evidence in this case, and you honestly believe it from the evidence to that extent that there is no reasonable doubt remaining in your minds, you can only answer and fulfill the high position that you now occupy by declaring your verdict in accordance with your belief. * * * It is your duty, however, should the evidence in this case fail to convince your minds to the extent that I have instructed you, should it fail to satisfy your minds beyond a reason-able doubt; it is your duty—no matter what may be the impressions or the desires of anybody—it is your duty to declare their innocence. *They are not to vindicate or prove their innocence. The people must establish it, and to that degree which I have named; and if they have not you ought equally as fearlessly say to these defendants that they are not guilty.*"

The jury could not have been misled, taking the charge as a whole.

Some questions are raised as to the admissibility of tes-timony, upon examination of which we find no prejudicial error.

The judgment is affirmed.

The other Justices concurred.