GLINNAN v. JUDGE OF THE RECORDER'S COURT OF DETROIT.

1. VENUE—APPEAL AND ERROR—MOTION FOR CHANGE—MANDAMUS—TRIAL BY JURY.

An order changing the venue of a criminal prosecution on motion of the people is discretionary and may be reversed on mandamus for abuse of the court's discretion. STEERE, C. J., and STONE and OSTRANDER, JJ., dissenting.

2. SAME—CHANGE OF VENUE—CAUSE.

Showing of the prosecution for change of venue considered, and *held*, insufficient to justify the exercise of discretion of the trial court in granting the motion.

3. CONSTITUTIONAL LAW — CHANGE OF VENUE — JURY — CRIMINAL LAW.

A change of venue authorized by 1 Comp. Laws, § 809, as amended (4 How. Stat. [2d Ed.] § 11784), upon motion of the prosecution, is valid, and does not infringe upon the constitutional right of trial by a jury of the vicinage. Constitution, art. 2, § 13. McALVAY and BROOKE, JJ., dissenting.

4. COURTS—RECORDER'S COURT OF DETROIT—POWER TO CHANGE VENUE—CIRCUIT COURTS.

The recorder's court of the city of Detroit has the same power on motion for change of venue as any of the circuit courts of the State have. Act No. 67, Pub. Acts 1909; Detroit Charter (1904), § 290.

Mandamus by Thomas E. Glinnan and others against James Phelan, one of the judges of the recorder's court of the city of Detroit, to compel respondent to vacate an order changing the venue in certain criminal cases in which relators were made respondents. Submitted January 21, 1913. (Calendar No. 25,514.) Writ granted February 19, 1913.

*Ormond F. Hunt* and *James McNamara*, for relators.

*Grant Fellows*, Attorney General, *Edward Waer*, Assistant Attorney General, *Hugh Shepherd*, Prosecuting Attorney, and *Charles T. Wilkins*, for respondent.

OSTRANDER, J. The relators, 10 in number, are, respectively, respondents in certain criminal cases pending in the recorder's court of the city of Detroit, in which cases they are severally charged with the crime of bribery. In another information they are charged jointly as conspirators. Informations having been filed and a plea of not guilty entered for each of the relators by order of the court, the prosecuting attorney thereafter asked for an order changing the venue for trial from the said recorder's court to some county in the State other than the county of Wayne. The application was supported by certain affidavits. The ground upon which a change of venue was asked was that a fair and impartial jury could not be secured. The motion of the prosecuting attorney coming on to be heard, relators presented to the court affidavits of citizens of the city of Detroit in opposition to the motion of the prosecuting attorney, and to the effect that fair and impartial trials could be secured in the city of Detroit. On the 30th of November, 1912, the court entered an order transferring the causes for trial to the sixteenth judicial circuit, which is the county of Macomb. A motion was made to vacate the order, and in support of the motion to vacate, the relators severally filed affidavits, in which, among other things, it is stated that said respondents, because of their financial condition, cannot make a fair, full, and complete defense in the county of Macomb. Upon this motion the prosecuting attorney filed 152 affidavits of residents of Macomb county, which, in substance, state the opinion of the affiants to be that fair and impartial trials can be had in said county of Macomb. The motion was argued, and thereupon the judge of said recorder's court, on December 27, 1912, made an order denying the motion to vacate the order theretofore entered. Thereupon the relators filed their petition in this court for an order requiring the judge of the recorder's court to show cause why a peremptory mandamus should not issue, requiring him to vacate and set aside his order changing the venue in said causes, and to proceed with the trials.

The order to show cause was issued, and return has been made thereto, and counsel for relators and for the people have been heard.

The propositions presented and argued on the part of the relators are:

(1) That respondent, the judge of the recorder's court, had no authority or jurisdiction to make the order changing the venue, *first*, because they are entitled of right, under the Constitution, to a trial by a jury of the county where the crimes charged against them are alleged to have been committed; and, *second*, because the recorder's court of the city of Detroit is a municipal court of limited jurisdiction, and is not invested with the power to order a change of venue for the trial of criminal cases.

(2) If the court had jurisdiction to make the order, the power is one involving the exercise of judicial discretion, and in the particular case judicial discretion has been abused.

(3) Mandamus is the only adequate remedy open to relators.

1. *First.* The constitutional provision relied upon is section 13 of article 2 of the Constitution of 1909, and appeared as section 27 of article 6 of the Constitution of 1850. The provision is:

"The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases unless demanded by one of the parties in such manner as shall be prescribed by law."

The legislature, by section 10 of Act No. 157 of the Laws of 1851, provided, with respect to the powers to be exercised by circuit courts:

"Each of the said courts, upon good cause shown, may change the venue in any cause pending therein, and direct the issue to be tried in the circuit courts of another county, and make all necessary rules and orders for the certifying and removing such cause, and all matters relating thereto, to the court in which such issue shall be ordered to be tried; and the court to which such cause shall be so removed shall proceed to hear, try and determine the same; and execution may thereupon be had, in the same manner as if the same had been originally pros-

ecuted in their county, except that in all criminal cases where the defendant shall be convicted and sentenced to imprisonment in a common jail, the court awarding the sentence. shall have the authority to direct and shall direct that the defendant be imprisoned in the common jail of the county in which the prosecution was commenced."

This provision of the statute has been, since its enactment, changed by legislation. Act No. 12, Laws of 1871; Act No. 309, Pub. Acts 1905; Act No. 161, Pub. Acts 1907; Act No. 67, Pub. Acts 1909 (4 How. Stat. [2d Ed.] § 11784).   But the language which has been quoted has never been changed, and it stands and the statute law is today substantially as it was in 1851.   The question presented is not a new one, and was determined against relators' contention in *People* v. *Peterson*, 93 Mich. 27 (52 N. W. 1039), and in *People* v. *Fuhrmann*, 103 Mich. 593 (61 N. W. 865).   For more than 20 years (the *Peterson Case* was decided in 1892) the point has been regarded as settled, and we deem it unwise to overrule the decisions which have been referred to.

*Second.* Among other things, the charter of the city of Detroit provides:

"The said recorder's court shall have original and exclusive jurisdiction of all prosecutions and proceedings in behalf of the people of this State, for crimes, misdemeanors, and offenses arising under the laws of this State, and committed within the corporate limits of the city of Detroit, except in cases cognizable by the police court of the city of Detroit or by the justices of the peace of said city."

There is no express provision in the charter of Detroit, as there is in the act providing for a superior court of Grand Rapids (Act No. 11, Pub. Acts 1905, § 30), which confers upon the recorder's court the power to change the venue in any cause pending therein.   The charter of the city of Detroit contains this provision relative to the recorder's court:

" Shall have power to issue all lawful writs and process and to do all lawful acts which may be necessary and

proper to carry into complete effect the powers and jurisdiction given by this act, and especially to issue all writs and process, and to do all acts which the circuit courts of this State within their respective jurisdictions may, in like cases, issue and do by the laws of this State."

We are of opinion that the recorder's court of the city of Detroit, with respect to the matter now in issue, is empowered to do what the circuit courts of the State might do under like circumstances.

2, 3. The judge of the recorder's court, it is conceded, was called upon to exercise judicial discretion. It was exercised in favor of the people and against the relators. It is sought to review such exercise in mandamus proceedings; that is to say, to substitute the discretion of this court for that of the judge of the recorder's court.

In *Lyle* v. *Cass Circuit Judge,* 157 Mich. 33 (121 N. W. 306), which was an application for a mandamus to compel the circuit judge to grant a change of venue, an exhaustive opinion was written by the late Justice Hooker, in which the authorities are collected and at considerable length are reviewed. In the opinion it is said:

"Were it competent for us to review his conclusions upon the merits, I should reach a different conclusion from his; but I think that it is not."

It is said in argument that this case does not decide that, where the court has jurisdiction, but relinquishes it and refuses to proceed further, this court will not interfere, and that what relators seek to do in this proceeding is, not to compel the trial court to arrive at a particular decision, but to proceed with the trial of the causes—an argument obviously fallacious and based upon premises which are not true in fact. The trials do not proceed in the recorder's court, because the court has determined that they shall take place in another jurisdiction. The decision in *Lyle* v. *Cass Circuit Judge* is controlling, and for reasons stated therein we decline to review the discretion exercised by the recorder's court.

The writ of mandamus is refused, and no costs are awarded.

STEERE, C. J., and STONE, J., concurred with Os-TRANDER, J.

BROOKE, J. (*dissenting in part*). I agree with my Brother OSTRANDER in holding that the recorder's court of the city of Detroit can lawfully make the order in question if a circuit court has power, under the circumstances of this case, to make such an order.

I am further of the opinion that, if the making of said order is a discretionary matter, it cannot be reviewed in this proceeding, if we follow the rule announced in *Lyle* v. *Cass Circuit Judge*, 157 Mich. 33 (121 N. W. 306). I am, however, convinced that to hold that a court, either circuit or recorder's, may make such an order upon the petition of the people, such as we have before us here, is to deny to relators their plain constitutional rights. It seems to me that such a holding strikes at the very foundation of liberty, and makes a mockery of all constitutional safeguards. For it cannot be denied that, had respondent chosen to order these relators to go to trial in Gogebic county, more than 500 miles from the scene of their alleged crimes, the decision of this court must have been the same, if the authority upon which my Brother OSTRANDER bases his opinion is sound.

In the case of *People* v. *Peterson*, 93 Mich. 27 (52 N. W. 1039), cited and relied upon by the people, Mr. Justice LONG, who wrote the opinion, quotes a single paragraph from the decision in the case of *Swart* v. *Kimball*, 43 Mich. 449 (5 N. W. 638). I think consideration of the whole opinion must lead to a conclusion at variance with the one announced by Mr. Justice LONG. Mr. Justice COOLEY there said:

"Now that in jury trial it is implied that the trial shall be by a jury of the vicinage is familiar law. Blackstone says the jurors must be 'of the *visne* or neighborhood; which is interpreted to be of the county where the fact is

committed.' 4 Com. 350. This is an old rule of the common law (Hawk. P. C. b. 2, 40; 2 Hale, P. C. 264); and the rule was so strict and imperative that if an offense was committed partly in one county and partly in another the offender was not punishable at all. Hawk. P. C. b. 2, c. 25; 1 Chit. Cr. L. 177. This overnicety was long since dispensed with, but the old rule has in the main been preserved in its integrity to this day. It is true that Parliament as the supreme power of the realm made some exceptions, which are enumerated by Mr. Chitty in his treatise on Criminal Law, vol. 1, p. 179; the chief of these being cases of supposed treason or misprision of treason examined before the privy council, and which, under a statute of Henry VIII, might be tried in any county, and offenses of the like character committed out of the realm, and which, by a statute of the same arbitrary reign, were authorized to be tried in any county in England. But it is well known that the existence of such statutes with the threat to enforce them was one of the grievances which led to the separation of the American colonies from the British Empire. If they were forbidden by the unwritten constitution of England, they are certainly unauthorized by the written Constitutions of the American States, in which the utmost pains have been taken to preserve all the securities of individual liberty. It has been doubted in some States whether it was competent even to permit a change of venue on the application of the State, to escape local passion, prejudice and interest (*Kirk* v. *State*, 1 Cold. [Tenn.] 344; *Osborn* v. *State*, 24 Ark. 629; *Wheeler* v. *State*, 24 Wis. 52); but this may be pressing the principle too far. *State* v. *Robinson*, 14 Minn. 447 [Gil. 333]; *Gut* v. *Minnesota*, 9 Wall. (U. S.) 35. But no one doubts that the right to a trial by a jury of the vicinage is as complete and certain now as it ever was, and that in America it is indefeasible. 1 Bish. Cr. Law (2d Ed.), § 552; Whart. Crim. Law, § 277; *Paul* v. *City of Detroit*, 32 Mich. 108; *Ward* v. *Pec⸱ ⸱e*, 30 Mich. 116.

" If we needed evidence of the value of the right, we would find abundance of it in this record. A citizen is arrested on a criminal accusation and carried off to a distant part of the State for trial. If he is poor and relies upon many witnesses for his exculpation, this will almost of necessity put it out of his power to make a complete defense; if he is a man of moderate means, the defense may ruin him. * * * But a disadvantage quite as great

as the want of means is likely to be experienced in the fact that the accused is away from his friends and among strangers, who will know of him only this: That he is under arrest upon presumptive proof of being a felon. Of what avail is a man's good reputation to him under such circumstances, when the neighbors who know it are at a distance, and when the very accusation among strangers will necessarily fix upon him a strong suspicion?

"We have not the slightest hesitation in declaring that the act of 1857, so far as it undertakes to authorize a trial in some other county than that of the alleged offense, is oppressive, unwarranted by the Constitution, and utterly void."

The eminent writer of this opinion, in his work on Constitutional Limitations (7th Ed.), p. 459, says:

"The jury must be summoned from the vicinage where the crime is supposed to have been committed."

In support of this text a note is appended, where it is said:

"Offenses against the State are to be tried in the county in which they are charged to have been committed; * * * but courts are generally empowered, on the application of an accused party, to order a change of venue, where for any reason a fair and impartial trial cannot be had in the locality. [Citing cases.] It has been held incompetent to order such a change of venue on the application of the prosecution. *Kirk* v. *State*, 1 Cold. [Tenn.] 344; *Wheeler* v. *State*, 24 Wis. 52; *Osborn* v. *State*, 24 Ark. 629; *People* v. *Powell*, 87 Cal. 348 (25 Pac. 481, 11 L. R. A. 75); * * * *Armstrong* v. *State*, 1 Cold. [Tenn.] 338; *State* v. *Denton*, 6 Cold. [Tenn.] 539. *Contra: State* v. *Robinson*, 14 Minn. 447 [Gil. 333]; *Willis* v. *State*, 10 Tex. App. 493."

To these authorities should be added the following: *State* v. *Howard*, 31 Vt. 414; *Ex parte Rivers*, 40 Ala. 712; *State* v. *Knapp*, 40 Kan. 148 (19 Pac. 728).

In *Hill* v. *Taylor*, 50 Mich. 549 (15 N. W. 899), it is said:

"Although there are some cases where by the rules of law that might be deemed the *locus delicti*, it cannot be seriously claimed that the prosecution can be had in a

county where the crime was not actually or in contemplation of law perpetrated. The constitutional guaranty on this subject is too plain to be controverted."

In the late case of *People* v. *Brock*, 149 Mich. 464 (112 N. W. 1116, 119 Am. St. Rep. 684), the principles laid down in these two cases were distinctly reaffirmed. There the late Justice HOOKER said:

"It would be a startling innovation should we say that the legislature has power to subject a person charged with crime to prosecution in any one of several counties. * * * Whatever may have been held by the courts of other States, the cases of *Swart* v. *Kimball*, *supra* [43 Mich. 443 (5 N. W. 635)], and *Hill* v. *Taylor*, 50 Mich. 551 [15 N. W. 899], settle the rule for Michigan."

It is, of course, true that all three of the foregoing decisions dealt with legislative enactments which empowered the people to initiate prosecutions in a county other than that in which the alleged crime was committed; but I challenge attention to the fact that it makes little difference to the accused whether he is originally indicted in a foreign jurisdiction, or, after indictment in his home county, he is, against his protest, removed to such foreign jurisdiction for trial. The result to him is identical in both cases; and if the legislature, by reason of constitutional limitations, may not directly enact a law abridging the rights of the individual I am at a loss to understand how it may do so indirectly by means of a statute relating to change of venue.

The authority upon which the decision in the case of *People* v. *Peterson* rests is unquestionably *People* v. *Webb*, 1 Hill (N. Y.), 179. This decision was announced in 1841. It is cited as authority in every case where it has been held that a change of venue may be had at the instance of the prosecution. In passing, it should be observed that the indictment had been removed to the supreme court by certiorari, and that the motion for a change of venue was made in the appellate tribunal. It further appears that the court carefully examined the

showing made and held it to be sufficient.  The court found its authority for making the order in two cases: *King* v. *Nottingham*, 4 East. 208, and *People* v. *Vermilyea*, 7 Cow. (N. Y.) 108.

I am of opinion that neither case is authority for the holding.  In the *Nottingham Case* the order removing the cause to an adjoining county was made under the Stat. 38 Geo. III, chap. 52.  Section 1 provides that—

"In every indictment removed into B. R. by certiorari, and in every information filed by the attorney general *if the venue be laid in the county of any city or town corporate*, it shall and may be lawful for the court in which such indictment, etc., shall be depending, at the instance of the prosecutor or of any defendant, to direct the issue joined, etc., to be tried by a jury of the county next adjoining to the county of such city."

Section 12 provides:

"That nothing in this act contained shall extend to enable any person to prefer any bill of indictment for any offense committed within the county of the city, etc., to the jury of such next adjoining county as aforesaid, or to remove any indictment, etc., except the person preferring such bill or applying for such removal shall enter into a recognizance before the court where such bill shall be preferred, or the court or magistrate to whom such application shall be made in the sum of 40 pounds."

A motion was made to quash the rule directing the removal and trial of the indictment in the county of Lincoln.  It was suggested that the twelfth section was meant to include all cases of removal of an indictment for trial *into the county at large from the county of the city.*  The prosecutor, at whose instance the removal had been made, had not entered into the recognizance for 40 pounds.  Lord Ellenborough, C. J., said:

"We are all satisfied that the twelfth clause, requiring the recognizance of 40 pounds to be entered into upon the change of venue, does not relate to cases where the indictment has been previously removed into this court by certiorari."

Two facts became apparent from an examination of this authority: *First.* The propriety or validity of the legislation was not discussed or questioned; indeed, it could not well be questioned in a jurisdiction where, as in England, the legislative power is supreme. *Second.* The act under which the order for the change of venue was made simply enlarged the vicinage from the county of the city to the county at large within which such city was located. Such an act, even in this country, and under the most stringent constitutional provisions, would probably be held valid. An act which provided that the trial of an indictment in the recorder's court of the city of Detroit might be removed to the circuit court for the county of Wayne would, in essence, be identical with the English act.

In the second case, *People* v. *Vermilyea, supra,* the court said:

"There is no doubt of our power, upon a proper case, to send a criminal cause down for trial to a county other than that in which the venue is laid. Crimes, however, are essentially local. Hence the venue, as such, cannot be changed. The place of trial must be altered by suggestion, and on clear proof that the cause cannot be tried in the county where the offense is laid, with safety to the rights of the defendant. The present motion rests on a single affidavit of one of the defendants; and, independent of the opposing affidavit, I cannot say I am satisfied there is any danger in a New York jury."

No authority is cited and none is necessary; for it is apparent that the application was made by the accused, and not by the prosecution.

In the *Webb Case, supra,* 1 Chitty's Criminal Law, 201 (Am. Ed. of 1836), is also cited. Upon examination of the text, we find it supported by a reference to the *Nottingham Case* discussed *supra.*

Our Constitution provides, "The right of trial by jury shall remain." While to these words some of the other States have added words such as "of the vicinage," "of the county," "of the county or district," such words do not enlarge or better define the constitutional safeguard

of the individual; they merely express in words what is implied by the language of our Constitution. *Watt* v. *People,* 126 Ill. 9 (18 N. E. 340, 1 L. R. A. 403); *Flint River Steamboat Co.* v. *Foster,* 5 Ga. 194 (48 Am. Dec. 258); 12 Enc. Pl. & Prac. p. 289, and notes.

While I believe that the decision in *People* v. *Peterson, supra,* was erroneous, and should not be permitted to stand as the law of this State, I desire to point out that in that case there had been two trials before the order for a change of venue was made. In the case of *People* v. *Fuhrmann,* 103 Mich. 593 (61 N. W. 865), an attempt was made to secure a jury in the county where the crime was alleged to have been committed. No jury could be obtained, after all available jurors in the county had been summoned. Whatever may be said about the *authority* of these two decisions, it is apparent that the facts in each case afforded a cogent argument for the rule adopted.

But no such exigency is presented by the case at bar. Here we have a prosecution launched against relators in a jurisdiction containing a population of half a million. No trial (resulting in a disagreement) has been had. There has not been even an attempt made to secure a fair and impartial jury. The claim, made on behalf of the prosecution, that such a jury cannot be obtained in the city of Detroit I believe to be unwarranted and unsound. It would be a sad commentary upon the decadence of modern civilization, if it were true.

If the rule in the *Peterson Case* is to remain the law of this State, I am of opinion that we should modify our holding in *Lyle* v. *Cass Circuit Judge,* 157 Mich. 33 (121 N. W. 306), to this extent: That, where the order for a change of venue is made upon the petition of the prosecution, and against the protest of the respondent, the *discretion* of the trial judge making the order may be reviewed upon mandamus.

To remit these petitioners to their remedy upon appeal would, in my opinion, fall far short of justice. In the

meantime they will have been compelled to go to trial in a foreign jurisdiction, under the disabilities pointed out. Even if, after conviction, a reversal be had upon appeal, the mischief will have been done, the wrong suffered. Were such a review to be had upon this record, I have no hesitation in saying that the order in question should be set aside as being a gross abuse of discretion.

The writ should issue.

MCALVAY, J., concurred with BROOKE, J.

MOORE, J. It is a well-settled rule of law that the language used in an opinion must be read in connection with the facts and circumstances disclosed by the record in the given case. As shown by the opinion of Mr. Justice BROOKE, the cases of *People v. Peterson*, 93 Mich. 27 (52 N. W. 1039), *People v. Fuhrmann*, 103 Mich. 593 (61 N. W. 865), and *Lyle v. Cass Circuit Judge*, 157 Mich. 33 (121 N. W. 306), are distinguishable from the instant case. In the cases where a change of venue was ordered on the application of the people, one of two things was shown: Either that there had been a disagreement of the jury after a trial was had, or that there were not a sufficient number of persons remaining in the county, eligible to act as jurors, from whom a jury could be procured. This showing having been made, it would follow logically that, if there was to be a trial at all which should result in a verdict, a change of venue would be necessary. Otherwise the accused, however guilty, might never be convicted.

In the case of *Lyle v. Cass Circuit Judge, supra*, the application for a change of venue was made by the respondent. In denying this application, the respondent was not deprived of the right of trial by a jury of the vicinage; and until it was demonstrated that he could not have a fair trial by such a jury he had no just cause of complaint.

In the instant case no trial has been had; indeed, no effort has been made to procure a jury; nor has it been

shown there are not plenty of persons in the city of Detroit, eligible as jurors, from whom an impartial jury might be obtained.

The right of the respondent to have his case tried by a jury of the vicinity was discussed at great length in *Swart* v. *Kimball*, 43 Mich. 443 (5 N. W. 635), from which opinion Justice BROOKE, in his opinion, has quoted at length, making it unnecessary to repeat here what was stated by him. We do not know of any modification of the rule as thus stated.

We do not understand that in all cases, simply because it is said the lower court has exercised a discretion, the writ of mandamus will be refused. If no showing had been made on the part of the people, would it be claimed that in granting a change of venue the trial judge had exercised a discretion which could not be reviewed by mandamus? What was, in fact, done was but little better from a legal standpoint. No effort was made to test out the question of whether a jury could be procured, as was done in the cases to which reference has already been made. Until some effort of that kind has been made, and the effort has resulted in a failure, the trial judge is not authorized to change the venue against the protest of the accused. If he does so act, instead of exercising a legal discretion, the act becomes an arbitrary one.

In *Michigan Mut. Fire Ins. Co.* v. *Wayne Circuit Judge*, 112 Mich. 270 (70 N. W. 582), the following language was used:

"In view of the growing frequency of applications for mandamus asking this court to review the action of subordinate courts, resulting in overloading this court with work which does not finally dispose of the case, it becomes important to decide whether, in a situation like the one at bar, the writ should issue. We are aware that the decisions of this court have not been uniform, and for that reason it is difficult to lay down a rigid rule which shall be followed in all cases. As the writ is a discretionary one, perhaps it is not desirable that an inflexible rule should be established. We think, however, a review of

the decisions will indicate, in a general way, when the writ should, and when it should not, issue. It is a general rule that the writ will not lie where the law has provided another remedy. It is said a writ of mandamus issues because there is no other adequate remedy, and justice and good government require a redress of the wrong. A court will not be required by this writ to take any action when another remedy is provided. It will not take the place of an appeal or a writ of error. Merrill, Mand. §§ 201, 209. To this rule an exception is made if the slowness of ordinary legal forms is likely to produce such immediate injury or mischief as ought to be prevented. Merrill, Mand. § 198; *People* v. *Cass Circuit Judge*, 39 Mich. 410; *Talbot Paving Co.* v. *Detroit Common Council*, 91 Mich. 262 (51 N. W. 933)."

In the instant case, if the order of the trial judge changing the venue stands, the respondents have been deprived of the important right of trial by a jury of the vicinage, without a showing that such a jury could not be procured; and before any other remedy can be invoked the mischief may be done. Under such circumstances, if the writ of mandamus may not issue, the accused is without remedy.

For these reasons, I think the writ should issue.

BIRD, J. For reasons which are historical, the rule that one charged with crime has a right to be tried by a jury of the vicinage has taken a fast hold on our system of jurisprudence. The rule itself is not in dispute; only its exceptions are questioned. The idea behind the rule is a "fair and impartial trial." Now and then, in the past, conditions have arisen which made a fair and impartial trial impossible, where the rule was rigidly enforced. The inefficiency of the rule under such conditions gave rise to exceptions to the rule. To meet this exigency, the legislature passed Act No. 157 of the Laws of 1851, providing, in substance, that when these extraordinary conditions arose a change of venue might be granted by the circuit court. The statute reads in part:

"Each of the said courts, upon good cause shown, may change the venue in any cause pending therein, and direct the issue to be tried in the circuit courts of another county."

This statute has been construed by the court as giving to the circuit courts the right to change the venue upon the application of the people, as well as upon the application of the respondent. *People* v. *Peterson,* 93 Mich. 27 (52 N. W. 1039); *People* v. *Fuhrmann,* 103 Mich. 593 (61 N. W. 865). In my opinion this was a proper construction. The people are interested in every man having a fair trial. The safety of the public depends upon this being done; and if a situation presents itself where a fair and impartial trial cannot be had the change should be made at the suggestion of the public prosecutor, as well as at the suggestion of the respondent. Indeed, I think it would be the duty of the public prosecutor to apply for such a change on behalf of an indifferent respondent, if convinced that he could not be afforded a fair trial by a jury of the vicinage.

With this construction placed upon the statute, Mr. Justice BROOKE attacks its constitutionality, and cites in support of his contention the cases of *Swart* v. *Kimball,* 43 Mich. 443 (5 N. W. 635); *People* v. *Brock,* 149 Mich. 464 (112 N. W. 1116, 119 Am. St. Rep. 684). In both of these cases the court was dealing with general laws passed by the legislature, which were in direct conflict with the rule, and which, if enforced, would have resulted in overturning it. What was said in those opinions has no application to the exceptions to the rule.

The power conferred upon circuit courts by this statute is one which ought to be exercised with great care and deliberation; and a change of venue, on behalf of the people, should be made only after a showing which convinces the court that public sentiment is in such a state as to render improbable a fair and impartial trial. And I am of the opinion that this court should stand ready to cor-

rect at the earliest moment any abuse of power in this regard, before it has resulted in harm to the accused. If it is necessary to modify the holding of this court in *Lyle* v. *Cass Circuit Judge*, 157 Mich. 33 (121 N. W. 306), to conform to this practice, then I am in favor of such modification.

The showing of the prosecuting attorney to obtain the order of removal was very meager. It was not such a showing as is contemplated by the statute, wherein it provides for a change of venue upon *good cause shown*. Neither was it such a showing as would ordinarily inform the court what the sentiment was among all classes, and in all localities, from which jurors might be drafted in a populous city of a half million people. By reason of the insufficiency of the showing, I am impressed there was an abuse of discretion in ordering the case removed.

The writ should be granted.

KUHN, J., did not sit.